H. W. SPAULDING, ET AL., Appellants, v. W. A. LAYBOURN, Appellee.

Evidence: CORROBORATIVE EVIDENCE: STATEMENTS OF PARTY. Where 1 a party upon the eve of trial amends his pleading, thus injecting a new demand into the case, and the other party offers evidence tending to discredit the same as an after thought, manufactured for the purpose of the case, it is permissible for the party making the demand to show that he made a similar claim about the time of the transaction involved, and that he advised his attorneys of the same at the time he laid his case before them.

New trial: REVIEW OF MOTION. Where the trial court makes no finding 2 of facts upon the affidavits and counter affidavits, in support and resistance of a motion for new trial, the appellate court will not consider the same.

Same: MISCONDUCT IN ARGUMENT. A statement of counsel in argument 3 to the jury that plaintiff was attempting to back out of an alleged oral contract as the evidence showed he had done in other

instances, was not such misconduct as to justify the appellate court
in interfering with the discretion of the trial court in ruling upon the
question.

Submission of issues.   Where there is evidence in support of a claim,
though contradicted, the issue is for the jury.

Compromise and settlement: EVIDENCE OF.   An oral offer of compro-
mise and settlement of a suit is not admissible in evidence; and
efforts of counsel to get the matter before the jury, persisted in to
the extent that the jury is fully advised on the subject, is reversi-
ble error, even though the jury were instructed not to consider
the same.

*Appeal from Poweshiek County District Court.*—HON. JOHN
F. TALBOTT, Judge.

MONDAY, FEBRUARY 23, 1914.

ACTION to recover a sum of money which it is claimed
defendant, as plaintiffs' agent, retained from them under a
claim that it was due him under his agency contract.   Defend-
ant pleaded that he was entitled to the money as compensa-
tion for his services, while plaintiffs assert that he had been
fully paid and was wrongfully detaining the sum of $4,124.13.
On the issues joined, the case was tried to a jury, resulting
in a verdict for the defendant in the sum of $295.87, with
interest, upon a counterclaim filed by him.   Plaintiffs appeal.
—*Reversed* and *Remanded.*

*A. C. Lyon and W. R. Lewis,* for appellants.

*Bray, Shifflett & Lake,* for appellee.

DEEMER, J.—It is agreed that defendant was plaintiffs'
agent in the state of Texas for the sale of certain vehicles
made by plaintiffs, and the real controversy is over the nature
of that agency, or rather upon the amount of salary and com-
mission to be paid.   Defendant admitted that he had made

collections for plaintiff amounting to the sum of $4,124.13, but claimed that he had applied the same on commissions due him, and he also filed a counterclaim against the plaintiffs, in which he asked judgment for additional services rendered, amounting to $1,265.87. An additional counterclaim for $975 for services rendered after December 31, 1908, was pleaded by defendant, based upon the following letter and telegram:

Dec. 26, 1908.  W. A. Laybourn, Austin, Texas: Letter received, keep men and sell all vehicles you have on hand. See letter.  S. M. Co.

December Twenty-Sixth, 1908.  Mr. W. A. Laybourn, Austin, Texas—Dear Sir: We have just telegraphed you as per the inclosed copy of telegram. Now in regard to closing out, we want you to close out all the vehicles you have on hand and we want you to keep the teams and men until you do get them closed out, but as fast as you can we want you to let the men go to the new superintendents. Mr. E. H. Spaulding has written you in regard to this, and we expect Mr. D. F. Warren will be down there in the near future. I will write you more fully in regard to this a little later. Yours very truly, Spaulding Mfg. Co., by H. W. Spaulding.

The plaintiffs' reply to the last counterclaim was in substance as follows:

That the claim is for work and business that he did in the selling and delivering of buggies under the contracts involved in this case, other than that alleged in said count, and was for labor and business that he did in completing sales made under said other contracts for which he has been fully paid by the commissions of $2 per vehicle, and was labor and business performed by him after the termination of the contracts, because he was unable or refused sooner to complete the business which had been done under the said contract, and that the telegram and letter set out in the counterclaim have no reference to any new contract or employment or any new labor or business, but only requested that the defendant finish up the business for which he was receiving $2 commission for the vehicles sold and delivered by him.

On these issues, the case went to trial to a jury, resulting in the verdict hitherto stated. Several points are relied upon for a reversal, and, to such as are material we now give our attention.

The primary controversy is over the nature of defendant's initial contract. He claims that he was to have a commission of $2 for each and every vehicle sold by him, his agents, or by plaintiffs themselves, through other agents, or from the factory direct, to any person within the state of Texas; while plaintiff insists that his compensation was to be based upon sales made by defendant or through his agency alone. In addition to this, there is a controversy as to the nature of defendant's employment, as pointed out in the answer already stated. The jury evidently found with defendant on both of these issues. While something is said in argument regarding the sufficiency of the testimony, the proposition is not argued, and we give it no further attention. The main points relied upon for a reversal are based upon misconduct of counsel and erroneous rulings said to have been made by the trial court.

I. In order to understand one of the matters complained of, it is necessary to make a further statement as to the record. In the answer and counterclaim first filed by defendant, he relied upon certain written contracts between him and the plaintiffs. This answer was filed November 21, 1910. Thereafter, and on January 11, 1911, plaintiffs demurred to the counterclaim, and the demurrer was sustained on February 2, 1911. After the disposition of certain answers, demurrers, etc., defendant on September 23, 1912, filed a substituted answer and counterclaim, in which he relied upon an alleged oral agreement with plaintiffs to pay him the commission claimed, and this was the pleading on which the defendant relied. As part of the examination of one of the plaintiffs, he was asked the following questions, to which responses were made as shown:

1. EVIDENCE: corroborative evidence: statements of party.

Q. I will ask you whether or not Mr. Laybourn at any time during the years 1907 and 1908 said anything to you about having an oral contract that you were to pay him a commission on sales made in Texas by you and your men? A. He did not.   Q. I will ask you when is the first time you ever heard anything about such an oral contract?   A. It was made when he made it in this suit here.   Q. Do you mean when he filed his pleading?   That is the first time you ever heard that he claimed an oral contract.   A. Yes, sir.   Q. I will ask you whether he had ever told you that he claimed that he had that right under the original written contract?   A. Yes, he claimed that he had it under the original contract a good many times.

And another of plaintiffs testified to the same facts, and also to the effect that defendant never at any time, during any of their controversies before suit or after, until the filing of his substituted answer and counterclaim, suggested that he had an oral contract or was claiming on anything but his written one, the latter of which the trial court thought did not support the defendant's contention.   This latter witness also testified on cross-examination as follows:

Then he (defendant) told me in regard to a contract with H. W. Spaulding in former years.   He stated that, although he had made a verbal agreement at the time he signed the written contract, that he just thought he would ignore that, or he might ignore that and abide by the written contract and put the Spaulding Manufacturing Company up a tall tree, and collect $2 a job on jobs that he had nothing to do with himself in Texas.

When defendant was called in rebuttal, the following record was made:

At the time and prior to the time the substituted answer and cross-petition in this case, which is marked Exhibit No. 20 Robison, and the original answer and cross-petition in this case, which is marked Exhibit A8 Robison, I discussed this case with my attorneys.   Q. Did you at that time tell your attorneys all of your causes of action and all your defenses

to the case which was brought against you? (Objected to as irrelevant, immaterial, incompetent, and hearsay. Overruled, and the plaintiff. excepts.) A. I did. Q. What did you tell them? (Same objection. Sustained, and defendant excepts.) Q. You may state whether or not before the pleadings were filed in this case, and in the case you brought yourself against the Spaulding Manufacturing Company, for the commissions claimed in the present suit, you told your attorneys about the oral contract made in February, 1907, and to which you have testified in this case. (Same objection, and calling for a self-serving declaration. Overruled, and plaintiff excepts.) A. I did. Q. You may state whether or not you told them all the facts and directed your attorneys to proceed, as in their judgment might seem best, in the answer or other pleadings. (Same objection. Sustained, and defendant excepts.) Q. You may state whether or not you yourself read, drew, or prepared any pleadings in this case, or, saw them until after they were filed. (Objected to as incompetent, irrelevant, and immaterial. Overruled, and the plaintiffs except.) A. I did not. Q. You may state whether or not you instructed your attorneys to draw them. A. I did. Q. You may state whether or not, before any pleadings were filed in this case, your attorneys instructed you that in their judgment it would be simpler if you could show a liability for commissions for your claim under the original contract without anything else; that it would be simpler to try the case based solely on that cause of action. (Objected to as incompetent and hearsay. Sustained, and defendant excepts.) Q. Did you have anything to do with, or did you sign, any pleading in this case, except your answer and counterclaim to the substituted petition? (Objected to as not the best evidence.) Court: You may answer whether you signed any other. (Plaintiffs except.) A. I don't recollect of signing any others. Q. Did you instruct your attorneys what to allege, what they were to put into any pleading that has been filed in this case? (Objected to as hearsay. Sustained, and defendant excepts.) Q. Did you tell your attorneys what to allege or put into any of the pleadings which have been filed in this case? (Same objection. Sustained, and the defendant excepts.)

It will be noticed that most of plaintiffs' objections were sustained, and that about all which the witness was permitted

to testify to was, that he told his attorneys his entire case. There was no error here prejudicial to the plaintiffs. Indeed the court might have, perhaps, been more liberal with the defendant. The object of the testimony offered by plaintiffs as to when they first heard of the oral contract was to discredit defendant's story and to convince the jury that it was an afterthought, manufactured, perhaps, for the purposes of the case. In such circumstances it seems to be the universal holding of the cases that it is permissible to show that he made similar statements soon after the transaction; and, in case of conflicting statements made by him, those first made may be supported by similar declarations about the time they were made. *State v. Vincent*, 24 Iowa, 570; *Green v. Cochran*, 43 Iowa, 544; *Rhutasel v. Stephens*, 68 Iowa, 627; *Boyd v. Bank*, 25 Iowa, 255; *State v. Cruise*, 19 Iowa, 312.

II. Misconduct of counsel for defendant in argument to the jury was made a ground of the motion for a new trial. This misconduct was attempted to be shown by affidavits which were met by counter affidavits, and the trial court made no finding of facts thereon, save as this may be inferred from the ruling on the motion. In such circumstances there is, as a rule, nothing to be considered by this court. *Ricker v. Davis*, 160 Iowa, 37.

2. New trial: review of motion.

At best we may only consider the admission made by the defendant's counsel in his affidavit, which reads as follows:

That during my closing argument to the jury in said case I did not say that the plaintiff H. W. Spaulding was attempting to go back on the contract which he made with the defendant Laybourn just as he always did, but the statement which I did make to the jury in my closing argument at the time referred to in the affidavits attached to plaintiff's motion for a new trial was this: That the plaintiff H. W. Spaulding had made the oral contract with defendant as claimed by defendant, and that the plaintiffs were now attempting to go back on it just as they had done in other instances; that before finishing

3. Same: misconduct in argument.

the sentence W. R. Lewis, one of the attorneys for plaintiffs, asked me to repeat the statement; that I did repeat the statement and then finished the sentence by adding that I had reference to the testimony which had been introduced showing that plaintiffs had authorized Mr. Laybourn to make a settlement with one Parker, who had been formerly in the employ of plaintiffs; that Mr. Laybourn had settled with him by agreeing to pay him $400; and that the plaintiffs refused to stand by and carry out that agreement.

This being the record, there was no such misconduct as to justify our interference with the discretion lodged in the trial court. *Hannestad v. Railroad Co.*, 132 Iowa, 232; *George v. Swafford*, 75 Iowa, 491; *Hammond v. Railroad Co.*, 49 Iowa, 450.

III. The only complaint made of the instructions is that the trial court refused to take the second count of the counter-

4. SUBMISSION OF ISSUES. claim away from the jury. There was no error here. There was testimony to support it, although contradicted by the plaintiffs, and the issue was for a jury.

IV. The only other proposition relied upon grows out of the following, as shown by the record:

Exhibit No. 15 Robison is a formal demand in writing, dated June 21st, upon the plaintiffs asking for number of vehicles sold in Texas between June 21, 1907, and September

5. COMPROMISE AND SETTLE- MENT: evi- dence of. 19, 1907. I presented it to the plaintiff Mr. H. W. Spaulding. He did not furnish me the information I wanted. Q. State what he said about it, if anything. A. He said he would give me $2,500 in settlement. (The plaintiff objects to the evidence as being an offer of compromise and not proper cross-examination. Sustained, and the defendant excepts. Plaintiff moves to strike out the answer of the witness for the same reason. Sustained, and the defendant excepts.) Court: The jury are instructed that, where evidence is striken out, they are not to consider it for any purpose. The Court: You are not permitted to state any offer made by Mr. Spaulding, the plaintiff, at that time in the way of settlement. Q. You may

state whether or not you had any conversation with Mr. H. W. Spaulding at the time the written demand was presented; it being Exhibit No. 15 Robison. A. Only that other conversation. Q. Did you have a conversation with him? A. Yes, sir. Q. State what the conversation was. Tell the jury what you said and what he said. A. He said he would have to submit it to his attorney and see me later. Q. Did you have any other conversation about it? A. A brief conversation. Q. State what that was. State what he said. Judge Lewis: We would like to have the court indicate the nature of what he is to state, if anything. Court: You are instructed, in answering the question, that you may not state any proposition in the way of a settlement or compromise made by Mr. Spaulding, or any one on behalf of the plaintiff, in that conversation, otherwise you may state the conversation. A. There was only a brief conversation between us at that time. Q. State what it was. A. The substance of it was that he would not tell me the number of jobs had been shipped to Texas. Q. Is that all of it? A. There was some talk about a compromise and some propositions made. (Plaintiffs move to strike out the answer for the same reasons as last. Sustained, and the defendant excepts.) Court: Observe the direction of the court that you are to state nothing in the conversation about a compromise. (Defendant offers to show by the witness that when he presented to the plaintiff H. W. Spaulding the written demand, marked Exhibit No. 15, that he had a conversation with Mr. H. W. Spaulding with reference to said demand, and that said plaintiff then and there would not tell him the number of cars that had been shipped to Texas, during the periods referred to in the demand, but that he would pay $2,500 in settlement therefor. Objected to by plaintiffs as being an offer to compromise a matter in dispute. Sustained, offer denied, and the defendant excepts.)

The witness being examined was the defendant himself. Some time afterward the following occurred in examining the same witness:

Q. Now, Mr. Lyon asked you about a conversation that took place between you and the plaintiffs just before you brought your suit. You may now tell the jury what that conversation was; what was said by them relative to it. Mr.

Lyon: We ask that the witness be instructed relative to any offer of compromise or settlement. Court: You may state the conversation, except that the witness is not permitted to state any matter of offer or compromise between you. Mr. Bray: The question is withdrawn; that is just what I was after. (Plaintiffs object to the statement as obviously intended to influence the jury; the question being improper.) Court: I don't think that will hurt anybody. (Plaintiff excepts.)

No complaint is made of the rulings of the trial court, save the last observation that nobody was hurt by the matter; but it is contended that counsel, with knowledge of the fact that the testimony was incompetent, or after a ruling that it was inadmissible, persisted in asking his questions and keeping the matter before the jury, and finally stated in the presence of the jury that he got just what he was after. That this latter matter was the fact that an offer of compromise and settlement had been made is reasonably clear from the record made.

Singularly enough, on the same day that plaintiffs filed their reply to the substituted answer, and when the case was called for trial, defendant in open court offered to confess judgment in plaintiff's favor for the sum of $1,500 and costs, which plaintiff refused to accept. No reference was, of course, made to this offer, and it is referred to at this time simply to show that it was difficult for plaintiff's counsel to meet the offer shown to the jury as to plaintiffs' offer to compromise, although the jury were told not to consider it. The case seems to fall within the rule announced in *State v. Roscum*, 119 Iowa, 330; *Welch v. Insurance Co.*, 117 Iowa, 394; *Hood v. Railway Co.*, 95 Iowa, 331; *Henry v. Railroad*, 70 Iowa, 233; *State v. Helm*, 92 Iowa, 540.

The sting was quite as effective as if addressed to the jury in argument and, if counsel had there said that plaintiffs had offered to compromise and settle for $2,500, the poison would have stuck, and the same ruling made by the

trial court, as shown by the record, would have been no antidote.

· The court below correctly held that the offer of settlement was inadmissible. · *Rudd v. Dewey,* 121 Iowa, 454, and cases cited. The authorities relied upon by defendant (*Milhollen v. McDonald Mfg. Co.,* 137 Iowa, 114; *Kassing v. Ordway,* 100 Iowa, 611; *Bayliss v. Murray,* 69 Iowa, 290) do not hold to the contrary.

We dislike to reverse the case on this ground, but counsel are required to keep within due bounds, and all oral offers of settlement and compromise should be kept secret just as much as a regular offer in open court, and neither party should have any advantage thereof or be made to suffer therefrom. The statute expressly says that a regular offer to confess judgment shall not be mentioned during the trial, and an oral offer to settle and compromise should have the same sanctity.

For the error pointed out, the judgment must be reversed, and the cause remanded.

*Reversed* and *Remanded.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.