LAWRENCE CORKERY, appellee, v. S. DAVID GREENBERG et al. trustees of different trusts, appellants.

No. 50568.

April 3, 1962.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellants.

Paul J. Yaneff, of Sioux City, for appellee.

Thornton, J.—Plaintiff brings this action to recover for injuries suffered in a fall in defendants' parking lot. The defendants appeal from the judgment entered on the jury verdict against them. They complain on two grounds: One, that the case should not have been submitted to the jury because plaintiff had knowledge of the condition of the parking lot of which he complained, and, two, that plaintiff's counsel improperly ar-

gued damages for pain and suffering and permanent disability could be computed on a per diem basis.

I. The first complaint requires a determination of whether the condition of the parking lot was obvious, reasonably apparent, and as well known to plaintiff in the exercise of reasonable care as it was to defendants as a matter of law. Plaintiff was 64 years old on the date of the accident, February 3, 1960. He was a janitor for Armour & Company and had been so employed for 14 years. He started work at 6 a.m. on February 3, 1960. He left home for work about 5 a.m. He was driving a 1953 pickup. When he arrived at Armour & Company he was unable to find a parking place on the street and then drove into defendants' parking lot adjacent to Armour & Company. He normally parked on the street, but when street parking was unavailable he used defendants' lot. When plaintiff drove into the lot there was no attendant on duty, no lighting facilities for the lot, and it was dark. When the attendant was on duty a 25¢ charge was paid to him at the gate, when he was not the 25¢ charge was paid by placing it in an envelope on which is written the license number of the car, and placing the envelope in a box, similar to a mailbox, provided for that purpose. This pay box is not located at the entrance, but at a fountain some distance from the entrance, on a post about five feet high. The area around the box is not covered. Plaintiff was aware of the arrangement for paying. He had used the lot before, but not for a week or so. On this date plaintiff drove to a parking place within a rod or so of the box. After putting his license number on an envelope containing a quarter he started to the box using a flashlight. When he was within five feet of the box and about to put the envelope in it he slipped and fell and received serious injuries.

There is ample evidence the parking lot was covered with snow and ice, and cut up by frozen ruts of varying sizes. This condition existed in the vicinity of the pay box. There was no sand, salt or cinders used on the lot or in the vicinity of the box. Prior to the date of plaintiff's fall others had fallen on the lot. The condition had existed for some time, this and the prior falls were known to defendants. They of course knew there were no lighting facilities for the area and the only light

provided was at the entrance when an attendant was on duty. The defendants kept the lot open on a 24-hour basis and expected patrons during hours of darkness.

■■ II. Defendants do not contend they did anything to make the lot safe for walking or in any manner warned plaintiff. They rely on our recent cases, Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 110 N.W.2d 246; Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252; and Anderson v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858. The duty of an occupier of lands is expressed in these three cases as follows: "The duty owed by the inviter is to those, and to those only, who do not know, or, in the exercise of reasonable care for their own safety, have no reasonable means of knowing, of defects or dangers." He may avoid liability in two ways: by making and keeping his lands safe, or by warning of the dangers. Obviously, actual knowledge of defects and dangers is equivalent to, perhaps better than, a warning. At page 54 of 249 Iowa, page 255 of 86 N.W.2d, in the Atherton case we quote from Restatement, Torts, Volume 2, section 343:

■ "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, * * *."

In addition to our cases cited above, defendants cite Nolan v. United States, 186 F.2d 578 (4th Cir. 1951); Hoffman v. The Kroger Co., 340 S.W.2d 152 (Mo. 1960); Wise v. Great Atlantic & Pacific Tea Co., 94 Ohio App. 320, 115 N.E.2d 33; Brooks v. Sears, Roebuck & Co., 302 Mass. 184, 19 N.E.2d 39; and Levine v. Hart Motors, Inc., 75 Ohio L. Abs. 265, 143 N.E.2d 602. These are all parking lot cases wherein it was held plaintiff failed to make a case for the jury. All do not turn on the exact question here. In these and our cases cited by defendants we do not find a question of the plaintiffs' ability to see, nor were the plaintiffs required by the nature of the transaction to go to a certain place. And there is no knowledge on the part of the defendants of prior falls due to the existing condition.

In Corrigan (at page 1173 of 252 Iowa) we again quote with approval from Stafford v. Gowing, 236 Iowa 171, 177, 18 N.W.2d 156, 159, "The facts of each particular case of this kind are controlling on the question of negligence."

Defendants contend plaintiff was fully aware of the condition from what was disclosed by his headlights as he drove in and in the vicinity of the box for the parking fee; that at that point plaintiff was at liberty to drive out of the lot and park elsewhere; that he was fully aware of the condition by use of his flashlight which he testified had a good strong beam as he left his pickup to walk to the box; and that the disclosure of the general condition, not the size and location of each rut, relieves the defendants from any further duty, citing Restatement, Torts, section 340 (1934).

Defendants base their claim of plaintiff's knowledge on his cross-examination, he then testified he saw snow, ice and ruts around the fountain where the pay box was located as disclosed by his headlights. When he got out of his truck, with aid of his flashlight, which he said had a good strong beam, he testified he saw ice, snow, ruts and footprints, and water on the ice. He saw there was no sand, salt or cinders on the ice as he walked to the pay box. He was holding the flashlight in front of him. Also there was testimony of those who came to assist plaintiff that they could see the condition as they walked up to him. However, this testimony does not constitute all of the testimony bearing on his knowledge. The claimed knowledge on cross-examination is subject to the limited illumination of headlights and a flashlight. The evidence also discloses he had no prior knowledge of the condition. What knowledge he had was gained in the short time it took him to drive in, park, and walk to the point of his fall. The rut he stepped in causing his fall was not plainly visible to him nor was the condition of the ice and snow on his way to the pay box. The ice and snow was not in its natural state. It was cut up with ruts and footprints. His testimony shows limited knowledge at most. In our three cases cited by defendants on the question of knowledge we find in the Atherton case the plaintiff had observed the defective condition of the step on previous occasions, she had been going to the store "six months or a year or maybe several years." She testified, "It always looked treacherous * * *. I would say that it looked each

and every time I would go in and out like it was a bad step." In the Anderson case the absence of handrails and a 14-inch drop on the ends of the steps were claimed as negligence. The plaintiff had used the steps before and the condition was plainly visible. In the Corrigan case the plaintiff fell over a step to a temporary stage that was in plain view. Plaintiff was looking in another direction. In these cases the condition complained of was in plain view and in Atherton and Anderson the plaintiffs had prior knowledge of the defect claimed. No question of illumination was involved and by the nature of the transactions the plaintiffs were not required to go to a certain place for payment as here. In these three cases there was nothing present to alert the defendants the existing condition involved unreasonable risk to the plaintiffs, and one they had no reason to believe the plaintiffs would not discover. The plaintiffs did or in the exercise of reasonable care should have discovered the condition of which they complained.

In this case the facts are not that clear. Defendants were operating a 24-hour-a-day parking lot without lights, they expected and invited patrons during hours of darkness, they knew of the condition and prior falls. Reasonable minds could properly differ on whether the defendants should realize the condition involved unreasonable risk to patrons, they had reason to believe patrons would discover the condition or realize the risk involved therein, and whether plaintiff did in fact or should have in the exercise of ordinary care discovered the condition or realized the risk involved. The jury could properly find defendants negligent in failing to cure the condition, warn thereof, or light the lot in such a manner as to make the condition reasonably apparent to plaintiff.

Support for this holding is found in Saddler v. Bethel Markets, Inc., 267 F.2d 805 (3d Cir. 1959), involving inadequate lighting of a parking lot; in Stafford v. Gowing, 236 Iowa 171, 18 N.W.2d 156, and Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 106 N.W.2d 579, both involving activities being carried on on the premises, and to some degree in Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140, wherein plaintiff was distracted by a display of merchandise and had been misled by an employee as to a railing which in fact did not reach entirely to the

bottom of the descent necessary to reach the basement floor. Support is also found in Lincoln v. Cambridge-Radisson Co., 235 Minn. 20, 49 N.W.2d 1, wherein the plaintiff fell on a step which she had seen as she entered the lunchroom. The step was located next to the cashier's stand and the fall occurred while plaintiff was intent on paying her check. Also a question of adequate illumination was involved. The discussion there was directed to contributory negligence and assumption of risk rather than primary negligence of defendant involved here.

III. Defendants' second complaint is based on the argument of plaintiff's counsel to the jury wherein he suggested to the jury how he arrived at the figure prayed in the petition for pain and suffering and permanent disability. For pain and suffering he suggested a figure based on the plaintiff's hourly rate while employed and 15% disability. The medical experts had testified to 30% and 10%. The figure amounted to 34¢ an hour or $5.44 for a 16-hour day, amounting to $1985 for the first year. He suggested 50¢ a day for the remaining period of plaintiff's life expectancy. For permanent disability he used the 34¢ per hour basis. He pointed out the total came to $47,000 plus. In concluding the argument he said, "I only suggest to you, ladies and gentlemen of the jury, how we arrived at that figure."

Defendants contend they are entitled to a new trial because such argument was improper. Recently many courts have dealt with the per diem formula argument. In Wisconsin and New Jersey the argument is condemned. Affett v. Milwaukee & Suburban Transport Corp., 11 Wis.2d 604, 106 N.W.2d 274; and Botta v. Brunner, 26 N. J. 82, 138 A.2d 713, 60 A. L. R.2d 1331. It appears in the Affett opinion it is reversible error for the trial court to mention to the jury the amount claimed in the petition, which the jury should not exceed in its award. Apparently this is also true in New Jersey. It should be noted that in Walker v. Baker, 13 Wis.2d 637, 109 N.W.2d 499, 507, plaintiff's counsel was charged with misconduct in telling the jury, " 'I am asking you to consider $25,000.' " The Wisconsin court said this was not improper argument to the jury under the rule adopted by this court in Affett v. Milwaukee & Suburban Transport Corp., supra. The per diem formula argument has been held error in West Virginia in Crum v. Ward, W. Va., 122 S.E.2d 18,

and in Armstead v. Holbert, W. Va., 122 S.E.2d 43, because the figures used were not in evidence and not a proper inference from the evidence. Such arguments are also held to be improper in Delaware, Missouri, North Dakota and Virginia. Henne v. Balick, 51 Del. (1 Storey) 369, 146 A.2d 394; Faught v. Washam, 329 S.W.2d 588 (Mo. 1959); see also Goldstein v. Fendelman, 336 S.W.2d 661 (Mo. 1960); King v. Railway Express Agency, Inc., N. D., 107 N.W.2d 509; and Certified T. V. and Appliance Co. v. Harrington, 201 Va. 109, 109 S.E.2d 126.

In Alabama, Florida, Illinois, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Nevada, Ohio, Texas, Utah, Washington, and the 6th Circuit, McLaney v. Turner, 267 Ala. 588, 104 So.2d 315; Ratner v. Arrington, Fla. App., 111 So.2d 82; Caley v. Manicke, 29 Ill. App.2d 323, 173 N.E.2d 209; Louisville & Nashville Railroad Co. v. Mattingly, Ky., 339 S.W.2d 155; Harper v. Higgs, 225 Md. 24, 169 A.2d 661; Yates v. Wenk, 363 Mich. 311, 109 N.W.2d 828; Flaherty v. Minneapolis & St. Louis R. Co., 251 Minn. 345, 87 N.W.2d 633; Arnold v. Ellis, 231 Miss. 757, 97 So.2d 744; Johnson v. Brown, 75 Nev. 437, 345 P.2d 754; Hall v. Booth, Ohio Ct. of App., 178 N.E.2d 619; Hernandez v. Baucum, Tex. Civ. App., 344 S.W.2d 498; Olsen v. Preferred Risk Mutual Insurance Co., 11 Utah 2d 23, 354 P.2d 575; Jones v. Hogan, 56 Wash.2d 23, 351 P.2d 153; and Pennsylvania Railroad Co. v. McKinley, 288 F.2d 262 (6th Cir. 1961), such arguments are held not to constitute reversible error either because the argument was thought not to be improper or no prejudice was shown.

 IV. We have not passed on this question, but in passing on the propriety of argument to the jury in Johnson v. Kinney, 232 Iowa 1016, 1027, 7 N.W.2d 188, 194, 144 A. L. R. 997, we said, "* * * The trial court has a broad discretion in passing on the propriety of argument to the jury, with which we will not interfere except in a clear case of abuse of that discretion. Mitchell v. Mystic Coal Co., 189 Iowa 1018, 1023, 179 N.W. 428; Hein v. Waterloo, C. F. & N. R. Co., 180 Iowa 1225, 1232, 162 N.W. 772; Womack v. Horsley, 178 Iowa 1079, 1091, 152 N.W. 65; 5 C. J. S., Appeal and Error, 511, 512, section 1611; 3 Am. Jur. 534, section 973. Before a new trial will be granted for misconduct in argument it must appear that preju-

dice resulted or that a different result would have been probable but for such misconduct. Hannestad v. Chicago, M. & St. P. R. Co., 132 Iowa 232, 233, 109 N.W. 718; State v. Gulliver, 163 Iowa 123, 139, 142 N.W. 948; 5 C. J. S. [Appeal and Error], 922, section 1713(b); 3 Am. Jur. 607, section 1059."

We have followed this statement in Connelly v. Nolte, 237 Iowa 114, 130, 21 N.W.2d 311, and in In re Estate of Springer, 252 Iowa 1220, 1234, 110 N.W.2d 380, 389. That the trial court has discretion in granting a new trial for improper argument see Russell v. Chicago, Rock Island & Pacific R. Co., 249 Iowa 664, 673, 86 N.W.2d 843, 70 A. L. R.2d 927. The proper rule is, a new trial should not be granted to a party not prejudiced. The defendants here do not contend the verdict was excessive. It is difficult to see how they would be otherwise prejudiced by this argument. It is not germane to other issues.

The tone of plaintiff's argument was to suggest to the jury the manner in which plaintiff had arrived at the amount prayed in the petition. There was testimony in the record from which the jury could properly find plaintiff's medical expenses and loss of wages amounted to $19,574.26. The verdict was for $25,-255.50. We of course cannot tell the jury awarded the full amount for medical expenses and loss of wages. But assuming such to be true, $5681.24 was allowed for pain and suffering and future disability. Plaintiff's life expectancy was shown to be 12.11 years. His medical witness testified he will have 30% partial permanent disability of his left leg. Defendants' medical witness placed the partial permanent disability at 10%. The court in accordance with our practice stated the amounts for the items of damage and the total amount claimed in the petition. And the jury was instructed they could not allow more than the amounts so claimed and not more than the total amount claimed in the aggregate. See Iowa Uniform Jury Instructions Nos. 3.7, 3.8, 3.9 and 3.15.

The task presented to the jury is to determine the amount in dollars and cents to be awarded for pain and suffering and future disability. The reasonable sum to be awarded is not subject to direct proof and is from necessity left to the sound discretion of the jury. Morris v. The C., B. & Q. R. Co., 45 Iowa 29. The evidence of the injury and its past and present

effect are before the jury as is its probable future effect. The task of the lawyer is to assist the jury in reaching a verdict. In doing this a suggestion of the manner in which the lawyer reached the amount asked without more cannot invade the province of the jury. The jury must reach their verdict by reasoning and drawing inferences. The per diem argument is nothing more than a suggestion of a course of reasoning from the evidence of pain and disability to the award. No reason is suggested why it would be proper to consider the total sum asked over the period of life expectancy and not for a portion of that period. In some cases it might well be that by showing the amount asked on an hourly or daily basis the unreasonableness of the amount asked would be apparent, and a reasonable amount suggested. Here plaintiff asked $47,000, his formula suggested $47,000 plus. It is apparent the jury did not use it, though they may have used some modification of it. Where this type of argument is used as a suggestion and illustration it is not improper. Nor does the fact counsel took his figures from a percentage of the plaintiff's hourly earnings in such manner as to connect them with the per cent of disability change the result. There is nothing about the figure to show it was other than arbitrarily arrived at. Certainly the jury knew there was no evidence that pain or disability is worth a percentage of earnings. We have no reason to believe the jury was misled or thought this argument of counsel was anything more than argument.

We find no reversible error.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.